BURNISS SHAW WILSON ET AL *v.*
J. F. McDANIEL ET AL

5-5479                                    465 S. W. 2d 100

Opinion delivered March 29, 1971
[Rehearing denied April 26, 1971.]

*Tompkins, McKenzie & McRae,* for appellants.

*McKay, Chandler & Choate,* for appellees.

FRANK HOLT, Justice. Appellants instituted suit to establish their claimed interest in, and for partition of, the 40-acre tract of land here in issue. The present appeal is a sequel to *Wilson* v. *McDaniel,* 247 Ark. 1036, 449 S. W. 2d 944, wherein the pertinent facts of this extended litigation are comprehensively detailed. There we reversed a summary judgment for appellees because several material issues of fact were unresolved. The case was remanded, and a trial on the merits resulted in a decree once again favorable to appellees. Hence this appeal.

The land in issue is part of a 240-acre tract owned by H. U. Hancock when he died intestate in 1905. Surviving him were his wife, Eunice, two sons, two daughters, and the five children of a predeceased daughter, Palestine Scott, as his heirs. The two sons, the two daughters, and two of the five Scott children (Henry and B. C.) conveyed to Eunice whatever interests they had in 80 acres which included the 40 acres now in litigation. The deed was dated November 18, 1905, but not recorded until 1930. Eunice died in 1907 and, by a will probated in 1908, devised "all of [her] property" (without enumerating or in any way specifying what constituted that property) to J. H. Hancock, one of her sons, for life and then to his daughters, Myrtle and Bertha, to share and share alike and, at their deaths, to their children. Her will predated by several months the 1905 deed to her.

By an exchange of in. truments in 1913 Bertha (who is still alive and without issue) received whatever interests J. H. and Myrtle had in the contested 40-acre

tract which she conveyed the same year to A. S. Frazier through whom appellees now claim title by mesne conveyances. Appellees' predecessors in title entered into possession of the lands in 1913, and appellees and predecessors have held possession and paid all taxes since that time. Myrtle died in 1965, and her two daughters and a son and his wife, appellants herein, now claim an undivided 22/50 interest in fee in the 40 acres, exclusive of a 3/35 interest never conveyed to Eunice since three of the Scott children did not sign the deed. Also claimed is an undivided 22/50 interest as remaindermen of Bertha's life interest. (As previously indicated, she had conveyed her interest in 1913 to appellees' predecessors in title.)

The chancellor found that the 1905 deed purportedly conveying 22/25 interests in the lands to Eunice was not delivered during her lifetime and, therefore, was ineffective. He also found that appellees' predecessor in title, J. R. McDaniel, took possession of this 40 acres in 1913 and that he and his successors in title have had continuous possession with payment of taxes on the land from 1913 to date. Appellants' complaint was dismissed for want of equity, and title was quieted and confirmed in appellees. For reversal, appellants assert two contentions: (1) The chancellor's finding that the dead was not delivered is against the preponderance of the evidence; and (2) the statute of limitations in adverse possession does not run against remaindermen until the death of the life tenant.

Appellants argue that a presumption of delivery exists since the deed, duly executed and acknowledged, was properly recorded, and also since it was in the possession of Myrtle, a successor to the grantee's title. *Smith* v. *Scarbrough*, 61 Ark. 104, 32 S. W. 382 (1895). They further assert that this presumption of delivery of the deed is buttressed by other facts such as: The tax records reflect that the 1906 taxes on the purportedly conveyed 80 acres (which included this 40 acres) were assessed to and paid by Eunice; she continued to live on this land with her grandchildren, Myrtle and Bertha, until her death in 1907; her son, J. H. Hancock and his

two children, Myrtle and Bertha, continued to live on the land until approximately 1913; the taxes for 1907 through 1911 were assessed to and paid by J. H. Hancock; the 1912 taxes were paid in 1913 by Bertha and her husband; a suit for partition instituted in 1908 by the heirs of H. U. Hancock did not include contestation of those 80 acres, but was restricted to the remaining 160 acres of H. U.'s original 240-acre tract; the exchange of deeds in 1913 between Myrtle and Bertha dividing the lands and Bertha's conveyance of her interest in 1913 to her uncle, A. S. Frazier, who in the same year conveyed his interest to appellees' predecessor in title; in an action brought in 1914 by the five Scott children involving this property, J. H. Hancock and Bertha claimed title under the 1905 will and deed, which were exhibits in that litigation; and Bertha, in the present action, testified to some of the occurrences which she could recall surrounding the execution of the deed.

While the recording of a duly executed and acknowledged deed, as well as its being found in the possession of the grantee (in 1958), will raise a presumption of delivery, the other factors enumerated by appellants do not conclusively establish that presumption. The taxes may well have been assessed to Eunice simply because she, thinking the 80 acres were hers irrespective of delivery of the deed, requested that they be charged to her. A partition suit need not involve all lands in which ownership is claimed. Furthermore, proof that the heirs simply considered Eunice to be the owner of those 80 acres does not establish delivery of the deed. Similarly, the fact that J. H. Hancock and Bertha made prior claim under the deed or that Bertha could recall and testify to its execution does not conclusively amount to proof of its delivery.

Upon first appeal of this case, we enumerated certain factors which raised the possibility or factual issue that the children and grandchildren of Eunice individually agreed to convey their interests to her; that such agreement was conditioned upon the premise that everyone would join in executing the deed; and that since this did not occur, the deed was not delivered. *Wilson* v.

*McDaniel, supra.* This position certainly appears to be supported by the fact that the grantors are designated in the deed as "The heirs and legatees of H. U. Hancock now deceased."

In our former opinion we reviewed the litigation instituted in 1914 by the five Scott children, including the two who signed the 1905 deed, against J. H. Hancock, Myrtle Hancock, Bertha Hancock Bethany and her husband. In that action they asserted that Eunice Hancock owned no interest in this 40 acres (and also other lands) except dower and homestead, or a life estate which expired at her death. These five heirs asserted that the defendants were denying the plaintiffs' title and interest in the lands. The three defendants answered and admitted that three of the five Scott children held a 3/5 of a 1/5 interest, however, that the two[1] who signed the 1905 deed had no interest. The deed was thus put in issue. In a substituted complaint these five Scott children again alleged that Eunice Hancock, their grandmother, had only a life estate in the lands and, therefore, could not convey the lands by her will. In a 1916 decree the trial court agreed with the plaintiffs, the Scott children, and held all five of them to be owners of an undivided 1/5 interest in the lands.

After reciting these proceedings in *Wilson* v. *McDaniel, supra,* we said:

"* * * The basis of the rendition of this judgment is not set out in the judgment, but it is at once evident that the court did not, at least as far as B. C. and H. F. Scott were concerned, consider the deed to Eunice Hancock to be valid. Another inference can also be drawn from the deed itself. One of the grantors mentioned in the deed is W. A. Scott—but W. A. Scott did not sign the instrument. The acknowledgments also show that some signed on one date, and others on a subsequent date. These circumstances, together with the fact that the deed was not recorded until 22 years after the death of Eunice, somewhat raise an inference that the deed

---

[1] B. C. and H. F. (Henry)

> was not delivered during the lifetime of Eunice Hancock; that is, these circumstances raise the possibility that the children and grandchildren of Eunice, individually agreed to convey their interest to her, but such agreement was conditioned upon the premise that everyone would join in executing the deed; since this did not happen the deed was never delivered."

We then indicated that a delivery is incomplete where made by some of the parties to a deed which shows on its face that it was intended to be jointly executed so that all should be bound by its covenants. *Consolidation Coal Co.* v. *Yonts,* 25 F. 2d 404 (6th Cir. 1928). See also Annot., 140 A. L. R. 265 (1942); 26 C. J. S., Deeds, § 49.

This rule of law is now the law of the case and is certainly sufficient to rebut the presumption of delivery; and, when applied to the facts of the case at bar, we think this rule controls the issue of delivery. We therefore cannot say that the chancellor's finding that the 1905 deed was not delivered is against the preponderance of the evidence. It follows that appellants were not remaindermen to a life estate in the lands here in issue; consequently, their second point for reversal—*i. e.,* as remaindermen they are not barred by limitations—need not be discussed.

Affirmed.