416 P.2d 34

Eugene Lincoln CLAYTON, In the Matter of the Adoption of Vicki Lynn Jones, Victor Steven Jones and Bret W. Jones, all minors, Petitioner and Respondent,

v.

Victor JONES, Natural Father, Protestant and Appellant.

No. 9721.

Supreme Court of Idaho.

June 27, 1966.

A. A. Merrill, Idaho Falls, for appellant.

Rulon R. Price, Idaho Falls, for respondent.

McFADDEN, Chief Justice.

Respondent Eugene Clayton instituted these proceedings by filing in the Probate Court of Bonneville County, his petition to adopt three minor children, i. e., Vicki Lynn Jones, Victor Steven Jones and Bret W. Jones. These three children are the issue of a marriage between appellant Victor Jones and Rosalee Spaulding Jones Clayton, which marriage was dissolved by decree of divorce entered April 4, 1963, in favor of the former Mrs. Jones, by the District Court of the Twelfth Judicial District for Jefferson County.

Respondent and the mother of the Jones children were married August 2, 1963. At the time of the marriage, respondent had custody of six of his own children, by a former wife.

Appellant filed a formal objection to respondent's petition for adoption, asserting that he was awarded visitation rights with his children under the divorce decree.

Some months subsequent to the hearing on the petition for adoption, the probate court entered its order of adoption in favor of respondent. Appellant timely appealed to the District Court from this order, on both questions of law and fact.

Trial de novo was had before the District Court, which entered findings of fact, conclusions of law and a judgment confirming the order of adoption previously entered in the probate court, from which judgment appellant perfected this appeal.

Although numerous assignments of error have been made by appellant, the controlling issue on this appeal is whether the trial court erred in its determination that appellant had abandoned his children within the purview of I.C. § 16–1504, which requires that the consent of the parents of a child must first be obtained before a child may be adopted, and also provides:

" * * that consent is not necessary from a father or mother deprived of civil rights, or adjudged guilty of adultery, or of cruelty, or for either cause divorced, or adjudged to be an habitual drunkard, or who has been judicially deprived of the custody of the child on account of cruelty or neglect. If it can be shown satisfactorily to the judge that the parent or parents have abandoned it, or if the father has unlawfully ceased to provide for its support, then it may be adopted by the written consent of its legal guardian or mother * * *."

In his petition for adoption, filed in Probate Court, July 31, 1964, respondent alleged:

"That the natural father of said children Victor Jones, abandoned said children in June of 1962 and ever since has failed to maintain regular personal contact with said children, and has failed to provide a reasonable support for said children."

This allegation was specifically denied by appellant. He contends that he maintained contact with his children. He further contends that under the decree of divorce he had visitation rights with his children and because of his disability he was under no obligation to contribute to their support. The divorce decree provided:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that the control, custody and care of the minor children of the parties, Jerry Lee Jones, Vickie Lynn Jones, Victor Stephen Jones and Bret W. Jones be awarded to the plaintiff, subject to the right of the defendant [appellant] to visit said minor children at all reasonable times and places.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that if and in the event defendant becomes able to earn sufficient money and to secure gainful employment he will pay to the plaintiff as support for said children the sum of $25.00 per month until each of said children becomes of age, it being understood, however, that defendant's handicap is taken into consideration and if he cannot work and earn sufficient money to take care of his children as above stated he will not be compelled to do so."

This portion of the decree is based on a stipulation filed in the divorce action and executed by appellant and his former wife, which provided that the court might award custody of the children to their mother, subject to the right of appellant to visit them at reasonable times and places and also that if appellant became able to earn sufficient money he should pay $25.00 per month for each child as support money.

Of the four children, the oldest daughter subsequently married, and the next oldest child, a daughter, was living with her maternal grandmother, and for practical purposes this appeal pertains only to appellant's two minor sons.

Appellant in the early spring of 1963, had his right leg amputated at a Veterans Hospital, and subsequently had difficulty with his left leg. Subsequent to the divorce, and up to the time of the marriage between respondent and the children's mother, the children were living with her, in an apartment in Rigby, during which time appellant

was living with his mother. During the period of time between the divorce and the mother's remarriage, appellant visited with the children two or three times, once being invited to dinner with the children at the apartment, another time he took the children to a rodeo, and on the other occasions the children were taken to visit with their father at his mother's home.

After the children's mother married respondent, she moved with the children to an island in the Snake River where respondent was employed and maintained his home, respondent being in charge of a municipal power plant situate thereon. Their home was approximately twenty miles from where appellant was living. Access to the island was by a bridge across a part of the river. After this marriage, the appellant visited in that home only once, the occasion being when the oldest daughter was married in December, 1963. On a couple of occasions the boys were taken in respondent's car to see their father at his home. Appellant gave the children a Christmas present or two, and had phone contact with the older of the two boys on a couple of occasions. He also gave the children some spending money, one occasion being at the time of the hearing on the adoption proceedings in the Probate Court.

At no time since the divorce did appellant ever contribute to the support of the children by sending money or necessities to his former wife. The appellant's contacts with his two boys were minimal. After the marriage of respondent and the children's Mother, appellant never asked her either personally, by phone or by mail, for permission to visit with the children. The times when appellant did see the children subsequent to the marriage were instances following the request of the children.

Since the divorce appellant purchased a new vehicle on contract, with payments being $95.00 per month. These payments were made by appellant from a pension check he received of $100.00 per month, and from sums advanced him by his relatives. The vehicle was purchased for appellant in

an attempt to make a living by selling oil products, but this line of work did not prove profitable enough to continue. Appellant also worked sporadically as a relief bartender.

■ The foregoing recitation of the facts reflects the case presented by respondent, and while many of the facts are in sharp dispute as between appellant and respondent, the record must be viewed most favorably to sustain the findings of the trial court. Conley v. Amalgamated Sugar Co., 74 Idaho 416, 263 P.2d 705; Huggins v. Green Top Dairy Farms, 75 Idaho 436, 273 P.2d 399.

The trial court found that since the divorce appellant contributed nothing in support of the children sought to be adopted, and that he contributed to the children nominal Christmas gifts in 1963; that since the marriage of the former Mrs. Jones to respondent, appellant did not visit with his children except on two occasions when the children expressed a desire to see him, and on the occasion when the oldest daughter was married; that appellant attempted to telephone his children on a few occasions; that the calls were not completed as the lines were busy, except on January 1, 1965, appellant's brother completed a call to appellant's son, Victor Steven, who did not desire to speak to his uncle, and respondent, upon taking the phone, refused to speak with appellant, because respondent considered appellant to be intoxicated; that since the marriage, on two occasions appellant talked to his son, Victor Steven, both calls having been instigated by his son. That appellant lived within 25 miles of his children and had not been bedridden.

Based on these findings the trial court concluded that appellant failed to maintain regular personal contact with his minor children, for over a year prior to the adoption hearing; that appellant has not paid reasonable support for the maintenance of his children, and that the failure to maintain regular personal contact with the children and to provide for them was without just cause and has continued in excess of one year; that appellant failed to maintain

a normal parental relationship with the children for a year.

Although this court has held in Altmiller v. Forsman, 76 Idaho 521, 285 P.2d 1064, and in Smith v. Smith, 67 Idaho 349, 180 P.2d 853, that non-support is not synonymous with abandonment insofar as children are concerned, the trial court's conclusion that there has been an abandonment in this case was not solely based on the fact of non-support, but also encompasses the failure of appellant to maintain a normal parental relationship. It was the trial court's determination that this failure, having continued for over a period of a year, constituted an abandonment. Initially the trial court in its conclusions of law held that appellant has "abandoned" the children as that term is defined by I.C. § 16–2005,[1] but on motion, this conclusion was stricken.

Notwithstanding that the trial court struck from the conclusions of law the reference to I.C. § 16–2005, which is a part of Chap. 20, Title 16 I.C. (S.L.1963, Ch. 145), which establishes a procedure whereby the parent-child relationship may be terminated by judicial decree, other conclusions of law,[2] reflect that he was applying the standards of this statutory definition.

This proceeding is one for adoption of children, not one for the termination of the parent-child relationship. In Moss v. Vest, 74 Idaho 328, 334, 262 P.2d 116, 119, it is stated:

"\* \* \* There can be no abandonment without a specific intent to sever all correlative rights and duties incident to the relationship of parent and child. *The evidence must be* but, in this case, is far from *clear, satisfactory, decisive or convincing that she intended to abandon and desert the children at the* time the custody was given to her mother or at any time thereafter. (Citing cases)." (Emphasis supplied.)

This statement was reaffirmed by this court in Application of Altmiller, 76 Idaho 521, 285 P.2d 1064 (1955). See also: In re Adoption of Walton, 123 Utah 380, 259 P.2d 881 (1953); Annot. Adoption—Abandoned or Deserted Child: 35 A.L.R.2d 662; Annot.: Adoption—Consent of Divorced Parent, 91 A.L.R. 1387; 47 A.L.R.2d 824.

■ The provisions of I.C. § 16–1504, being a part of Chapter 15, Title 16 I.C., entitled "Adoption of Children" provides that no adoption of a legitimate child can be had without the consent of its parents, if living, subject to exception previously set out. Herein no contention is made that appellant gave his consent to the adoption. The record does not show the grounds for the divorce of appellant by the children's mother, or if appellant was divorced for adultery or cruelty; the divorce decree

1. I.C. § 16–2005. "The court may grant an order terminating the relationship where it finds one or more of the following conditions exist:

"a. The parent has abandoned the child by having failed to maintain a normal parental relationship, including but not limited to reasonable support or regular personal contact; failure of the parent to maintain this relationship without just cause for a period of one (1) year shall constitute prima facie evidence of abandonment under this section.

"b. \* \* \* \*"

2. Conclusions of law:

"1. The said Victor Jones has failed to maintain regular personal contact with his minor children, Vicki Lynn Jones, Victor Steven Jones and Bret 'W' Jones in excess of one year prior to the date of the hearing on the petition of Eugene L. Clayton.

"2. That Victor Jones has not paid a reasonable support for the maintenance of said children since his divorce from Rosalee Jones Clayton.

"3. That his failure to maintain said regular personal contact with said children and his failure to provide them with a reasonable support has been without just cause and has continued without just cause for a period in excess of one year.

"5. \* \* \*

"6. That Victor Jones has abandoned said children as the term is defined by the common law of Idaho, he having neglected and refused to perform the natural and legal obligations of support."

"7. \* \* \*"

required appellant to make payments for the support of the children only if he "became able to earn sufficient money and secure gainful employment", and the record discloses that he was not able to earn sufficient money and was not gainfully employed. Thus, it cannot be said he "unlawfully ceased to provide". Moreover, the record establishes that appellant did maintain some contact with his minor children, indicative of lack of intent on his part to abandon them within the standards discussed by this court in Moss v. Vest, supra. By reason of the record we are constrained to the view that the trial court failed properly to apply the standards for determination of whether appellant "abandoned" his children, as that term has been applied in Moss v. Vest, supra, and Application of Altmiller, supra.

Judgment reversed.

Costs to appellant.

McQUADE, TAYLOR, SMITH and SPEAR, JJ., concur.